**ANTHONY E. MCNAMER, OSB #00138**
anthony@mcnamerlaw.com
**DEBORAH GUMM, OSB #040646**
deborah@mcnamerlaw.com
MCNAMER AND COMPANY
920 SW Third Avenue, Suite 200
Portland, Oregon 97204
Telephone: 503.727.2500
Facsimile: 503.727.2501

*Attorneys for Defendant
and Counterclaimant Michael D. Calmese*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.,** a Delaware corporation,<br>　　　　Plaintiff and<br>　　　　Counterclaim Defendant,<br><br>v.<br><br>**MICHAEL D. CALMESE,** a resident of Arizona,<br>　　　　Defendant and<br>　　　　Counterclaimant. | Case No. CV08-0091 ST<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

Faced with a potential trademark infringement suit in Arizona, plaintiff adidas America, Inc. ("adidas" or "Plaintiff") filed this defensive suit in Federal Court in Oregon. Until very recently, defendant Michael Calmese ("Calmese") was forced to defend this suit in Oregon without assistance of counsel. Plaintiff now moves for summary judgment. Plaintiff essentially argues that because Calmese is not a multi-national corporation with massive sales and marketing, he does not have the same rights in his trademark as a company like adidas. As set

Page 1 – DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

forth below, there is ample evidence to show that Calmese's trademark for "PROVE IT!" (the "Mark") is a valid mark and that adidas's use of that <u>exact</u> mark on the <u>exact</u> same goods to which the Mark is applied necessarily causes confusion.

## SUMMARY OF FACTUAL BACKGROUND

Calmese first used the trademark "PROVE IT!" in interstate commerce in November 1995. Calmese Dec. ¶ 2. On November 18, 1998, Calmese was granted a registered trademark, U.S. Registration No. 2,202,454 for the mark "PROVE IT!" for "clothing, namely, men's and women's shirts, men's and women's T-shirts, men's and women's shorts, baseball hats, men's and women's jackets, [socks,] underwear and men's and women's sweatshirts." Rich Dec., Ex. A;[1] Calmese Dec. ¶ 2 (Trademark Registration No. 2,202,454). On January 2, 2004, Calmese filed a Combined Declaration of Continuing Use and Incontestability ("Combined Declaration"). Rich Dec., Ex. G.

Since 1995, Calmese has used the Mark continuously for all the clothing items listed on his registration. Calmese Dec. ¶ 4. Calmese has featured his products on his websites, www.usaproveit.com and www.proveitsportsgear.com ("Websites"), advertising his products throughout the United States, since at least 1997. Calmese Dec. ¶ 4, Ex. 5 (ISP Agreement). Additionally, Calmese himself tirelessly markets and promotes his products across the country. *Id.* at ¶ 4. The Mark has been used in sponsorships with professional athletes and even a car racing team. *Id.* at ¶ 5, Ex. 6. Calmese dedicated much of the last 15 years of his life to promoting the Mark and its related goods. *Id.* at ¶ 4.

adidas is a national and international manufacturer and retailer of athletic footwear and apparel, which it sells nationally and internationally through its website, its company stores, and

---

[1] References to Rich Dec. are to adidas' Declaration of Jamie Rich in Support of Motion for Summary Judgment.

Page 2 – DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

many other retail outlets. In or around January 2007, Calmese discovered that adidas was selling a t-shirt with the mark "PROVE IT" in large bold print across the front. *See* Calmese Dec., Ex. 7; *see also* adidas Backman Dec., Ex. A. Additionally, adidas used the mark "PROVE IT" in bold print on hang tags and on the actual sales receipt. Calmese Dec . ¶ 6; Exs. 8 and 9. Plaintiff admits it sold at least 15,000 of these t-shirts with the mark "PROVE IT' in large print on the front of the shirt <u>and</u> on the hang tags. Motion at 8.

According to adidas soon after Calmese sent adidas a demand letter, adidas stopped selling, or at least manufacturing, the infringing t-shirts. *See* Calmese Dec. ¶ 7; Motion 8-9;

While adidas claims it had no prior knowledge of the Mark, obviously a USPTO search would have immediately revealed the mark in Class 15. Additionally, beginning as early as April 1999, Calmese entered a dialogue with Reebok International Ltd. ("Reebok") regarding the possibility of licensing the Mark. Calmese Dec. at ¶ 8. Reebok has been a subsidiary of adidas since Summer 2005. McNamer Dec. ¶2, Ex. 1 (Reebok Merger Announcement). Further, Calmese co-sponsored charity events with Reebok throughout the time leading up to January 2007 (well after adidas began offering the infringing t-shirts for sale in 2006). Calmese Dec. ¶ 8; *see also* Motion at 8.

When Calmese threatened to file suit for the intentional infringement, adidas immediately filed this declaratory relief action in Oregon.

**STANDARD OF REVIEW**

Summary judgment is only authorized if no genuine issue of material fact exists. Fed. R. Civ. P. 56(c). It is the moving party's burden to show the absence of an issue of material fact. *Kruger v. Pacific Benefits Group Northwest,* 228 F.Supp. 2d 1143, 1146 (D. Or. 2001). The Court must resolve for the non-moving party all reasonable doubts regarding whether genuine

issues of material fact exist; all inferences drawn from the facts are cast in the light most favorable to the non-moving party. *Id.*

In particular "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Thane International, Inc. v. Trek Bicycle Corp*, 305 F. 3rd 894 (9th Cir. 2002)(citing *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) and *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)).

Plaintiff's argument cannot withstand the summary judgment standard of review, particularly as that standard is applied to the fact-intensive issue of likelihood of confusion.

## ARGUMENT

**A.    Calmese Owns a Valid Trademark**

On November 18, 1998, Calmese was granted a trademark, U.S. Registration No. 2,202,454 for the trademark "PROVE IT!" for "clothing, namely, men's and women's shirts, men's and women's T-shirts, men's and women's shorts, baseball hats, men's and women's jackets, [socks,] underwear and men's and women's sweatshirts." Calmese used the Mark for each of these goods continuously since 1994 and marketed and sold each of these goods at the time of registration. Calmese Dec. ¶ 4.

On January 2, 2004, Calmese filed the Combined Declaration. Submitted with that application was a specimen that was still in use on Calmese's goods. *Id.* at ¶ 3.[2]  The Combined

---

[2] Plaintiff simply assumes that because the tags were used in 1998 that Calmese must have necessary sold-through all those tags by 2004. That is simply untrue. Calmese ordered a significant number of tags and still was using those tags in 2004. Calmese Dec. ¶ 3, Ex. 1. Obviously, nothing requires that Calmese use different tags in 2004 than he used in 1998, or that he only use cloth tags and not paper hang tags, or embroidered insignias or printed tags (all of

Declaration was accepted, making the Mark incontestable.

### 1. The Mark Was Continuously Used In Commerce

Plaintiff's entire argument regarding the invalidity of the Mark ignores significant evidence that Calmese has continuously used the Mark since 1995. Plaintiff simply discounts all of the sales, marketing and manufacturing information provided by Calmese in discovery and all of the information Calmese personally provided to adidas in letters and conversations.[3] Instead, because adidas's online "search" failed to net some specific goods, adidas jumps to the unsupported, and unsupportable, conclusion that the goods do not exist. However, the following lists significant evidence of Calmese's continued and current use of the Mark on all goods listed:

- All goods sold continuously. Calmese Dec. ¶¶ 3-10, Exs. 1-11 (all clothing); Sheppard Dec. ¶ 1-3 (clothing corporate purchaser); Alvarado Dec. ¶¶ 2-5 (Clothing Manufacturer/Printer); Rayton Dec. ¶ 2-3 (Clothing Manufacturer/Printer); Jones Dec. ¶¶ 1-3 (Clothing Purchaser incl. Underwear); Anwar Dec. ¶¶ 1-3 (Clothing Purchaser incl. Underwear); Lemus Dec. ¶¶ 2-3 (Clothing Manufacturer/Printer); Holmes Dec. ¶¶ 1-3 (Clothing Purchaser inc. Underwear); Gosa Dec. ¶ 1-3 (Clothing Purchaser incl. Underwear).

---

which are used on Calmese's products). *Id.* at ¶ 3, Exs. 1 (Cloth Tag Order Form), 2 (Embroidered Insignias) 3 (Screen-printed Tags). And nothing requires that a specimen be submitted for every single use made by a registrant. Clearly, adidas does not submit a separate specimen for every tag, label, or insignia ever used on its products.

[3] It should be noted that adidas has chosen to file its motion for summary judgment prior to the end of fact discovery and without taking a single deposition. Had adidas taken Calmese's deposition (or believed the information Calmese provided verbally to adidas), adidas would have learned that its various "assumptions" were incorrect. It should also be noted that adidas objected to every discovery request and provided Calmese (since he had no counsel) with almost no internal adidas documentation (including sales reports, design info, trademark search info, or any correspondence at all related to the infringing t-shirts). Calmese will take that up with the Court in the near future.

- Cloth tags were printed and in use in 1996 and 2004.  Calmese Dec. ¶ 3, Ex. 1.

- All goods are sold through the Websites throughout the United States.  Calmese Dec ¶ 4.

- All goods are additionally sold by word-of-mouth through Calmese's various business and sports contacts and his personal marketing efforts.  *Id.*

- All goods are advertised on the Websites and by professional athletes and associated with professional teams.  Calmese Dec. ¶¶ 4-5; Ex. 6; *see also* www.usaproveit.com and www.proveitsportswear.com

- Goods are sold at retail outlets, like Play It Again Sports.  Calmese Dec. ¶¶ 9-10; Exs. 10 (Play It Again Sports Photo) and 11 (BJ's Market).

Apparently, adidas does not contest the fact that Calmese has continuously used the Mark on all of the products listed in the Registration, save underwear.  Instead, adidas accuses Calmese of fraud on the PTO related to the "hang tags" and makes the unsupported claims, that Calmese never sold underwear using the Mark.

As to the "hang tag argument," again, nothing requires Calmese to submit a specimen for every single separate use of its Mark.  Clearly, adidas does not submit a specimen for every single use of its trademarks on every single product it sells.  Calmese was only required to submit a specimen showing his current use of the Mark.  That's exactly what he did.  Calmese Dec. ¶ 3, Ex. 1.  Calmese was still using, among other methods of identification, the cloth tags at the time of the Combined Declaration.  *Id.*  Additionally, Calmese uses embroidered insignias, screen printed tags and paper hang tags,  *Id.* at ¶ 3, Exs. 2 (Embroidered Insignias). 3 (Screen Printed Tags), 4 (Hang Tags).

The remainder of adidas "hang tag argument" does not make sense.  Plaintiff argues that Calmese has failed to provide adidas with any documentation showing use of the Mark on

Calmese's products. However, Plaintiff attaches several pictures of Calmese's products featuring the Mark as sewn-in insignias on the products. *See* Rich Dec. Exs. K-M. Plaintiff was also provided, in discovery, a photograph of a t-shirt which clearly shows a screen-printed inside collar tag. Calmese Dec. ¶ 3, Ex. 3(Bates No. 225).[4] Plaintiff ignores its own evidentiary submission and the documents provided in discovery.[5]

Moreover, Calmese continuously used the mark on underwear and submitted an accurate specimen of use for his initial registration as well as the Combined Use. *See* Calmese Dec. ¶ 4; Alvarado Dec. ¶ 4; Rayton Dec. ¶ 2; Lemus Dec. ¶ 2; Holmes Dec. ¶¶ 1-2; Gosa Dec. ¶ 1; Anwar Dec. ¶ 1. And Calmese produced copies of "PROVE IT!" brand underwear to adidas. *See* McNamer Dec., Ex. 2, pp. 1 (PROVE IT!" brand tank tops), 2 (Woman's tank-top and "shortie" underwear), and 3 (spaghetti strap tank-top, baby doll tee and spandex underwear).[6] Indeed, adidas attaches photographs of "PROVE IT!" brand underwear to its own declaration. *See* Rich Dec., Ex. L.

---

[4] Plaintiff also appears to argue that Calmese has provided no evidence of any sales. Again, that argument ignores documents produced in this action. *See e.g.* McNamer Dec. ¶ 11, Ex. 10.

[5] Moreover, even if Calmese had submitted an old tag, and was using a newer tag or different tag, that would not constitute fraud on the trademark office and there would be no way for Plaintiff to show that the Trademark Office would not have accepted one of the other tags in use at the time of the Combined Declaration. All of the various tags would have been acceptable specimens, including the sewn-in insignias.

[6] Plaintiff seems to overlook the fact that t-shirts and tank tops can be worn as both "underwear" and "outer clothing." *See e.g.* Wikipedia definition ("Underwear are clothes worn under other clothes, often next to the skin. . . . Some items of clothing are made to be worn as underwear, while others such as T-shirts and certain types of shorts can be used both as underwear and as outer clothing. If made of suitable fabric, some types of underwear can serve as nightwear or swimsuits. Items of underwear commonly worn by women today include brassieres (bras) and panties (also known as knickers), while men wear briefs, boxer shorts or boxer briefs. Items worn by both women and men include T-shirts, sleeveless shirts, bikini underwear, thongs and G-strings.") The very t-shirts at issue can be worn as either underwear or outer clothing.

### 2. Calmese's Use of the Mark Is Not "Merely Ornamental"

When applying for the original mark, the Trademark Office initially rejected the first specimen as "merely ornamental." Calmese then submitted a substitute specimen of a clothing label, which was accepted by the Trademark Office. A similar specimen was submitted and accepted by the Trademark Office with the Combined Declaration. Depending on the item, Calmese uses clothing labels, hang tags, embroidered insignias and screen printed tags, or more frequently, a combination of the above, to identify the source of his goods. Calmese Dec. ¶3, Exs. 1-4. None of those ways of displaying the Mark are even arguably ornamental.

Whether adidas uses clothing labels on all its clothes is irrelevant. Obviously many, if not most, athletic clothing companies distribute items—in particular t-shirts and sweatshirts—that display large logos on the front. *See e.g.* McNamer Dec. ¶ 4; Ex 3 (adidas, Nike, Converse and UnderArmour t-shirts with large logos on the front).

Moreover, Calmese's "PROVE IT!" t-shirt is nearly identical to the infringing adidas t-shirt. Both have a "PROVE IT!" logo on the front of the t-shirt and a "PROVE-IT" hang tag. *See* Calmese Dec., Exs. 4, 7 and 8. Clothing labels, hang tags, embroidered insignias and screen-printed collar tags are not even arguably "merely ornamental." Assuming for the sake of argument that using a logo on the front of a t-shirt is "ornamental," the fact that a logo may be used ornamentally, in addition to it being used non-ornamentally, does not somehow negate the non-ornamental use. If it did, adidas would have lost all rights in its marks years ago.

Calmese owns the Mark, and the Mark is a valid trademark.

### B. Plaintiff's Use of the Exact Same Mark on the Exact Same Goods Is Likely to Cause Confusion

As the *Thane* court made clear: "The nature of the likelihood of confusion inquiry largely shapes the role of district courts addressing motions for summary judgment and our role in

reviewing grants and denials of summary judgments. Likelihood of confusion is a factual determination." *Thane*, 305 F.3d. at 901-902 (*citing Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001)). Therefore, a district court may only grant summary judgment if "no genuine issue" exists regarding likelihood of confusion. Fed. R. Civ. P. 56(c). The *Thane* court explicitly warned "that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Thane*, 305 F.3d. at 901-902 (citing *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1265 (9th Cir. 2001) and *Interstellar Starship Services, Ltd. v. Epix, Inc*., 184 F.3d 1107, 1109 (9th Cir. 1999)).

Taking into account this clear distaste for the granting of summary judgment motions on likelihood of confusion, the courts ordinarily rely on an eight factor test first articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), to help determine if a likelihood of confusion exists. The Ninth Circuit has made clear that the eight factors, in order of importance are: (1) the similarity of marks; (2) the relatedness of goods; (3) the marketing channels used; (4) the strength of the mark; (5) the intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care purchasers are likely to exercise. *Brookfield Communs. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1054 n.16 (9th Cir. 1999).

   1.   **Similarity of the Marks**

Similarity of the marks is the most important factor in determining likelihood of confusion. Indeed, "the more similar the marks in terms of appearance, sound and meaning, the greater the likelihood of confusion." *Id*. at 1054. Plaintiff's use of "PROVE IT" is almost

completely identical to Calmese's Mark.[7]  Plaintiff even uses all capital letters, exactly like Calmese, when displaying the Mark.  In fact, Plaintiff also uses the identical mark on its hangtag, just like Calmese does.  Calmese Dec. Ex. 7.  As Exhibit 7 to the Calmese Declaration shows the adidas t-shirt at issue next to one of Calmese's t-shirts.  The use of the Mark on those t-shirts and hang tags is nearly identical.  Plaintiff is using the exact same mark on the exact same goods.  This is the most important factor, and it weighs <u>completely</u> in Calmese's favor.

### 2. Relatedness of the Goods

The second most important factor is the relatedness of the goods.  *Id.* at 1055-1056.  As the Ninth Circuit has made clear: "In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."  *Id.* (*citing Lindy Pen Co. v. Bic Pen Corp*, 796 F. 2nd 254, 256-57 (9th Cir. 1986)(reversing a district court's finding of no likelihood of confusion even though six other likelihood of confusion factors all weighed against a finding of likelihood of confusion)).  Here, we have virtually identical marks used on identical products (t-shirts).  The inquiry literally ends there.  With all inferences drawn from the facts cast in the light most favorable to Calmese, and with the undisputable fact that the marks and the goods are nearly identical, Plaintiff cannot possibly meet its burden.

### 3. Marketing Channels

The third most important factor weighed by the court is marketing channels.  *Brookfield*, 174 F.3d at 1057.  Although adidas obviously has much wider marketing channels, and many more marketing dollars to spend on advertising, both adidas and Calmese direct their products to consumers of athletic wear and clothing.  Both sponsor athletes and athletic teams in an effort to

---

[7] Calmese uses an exclamation mark.

reach that consumer.  Calmese Dec ¶ 5.  Both sell their clothing in sports-related retail stores. *See* Calmese Dec. ¶ 9, Ex. 10 (Play It Again Sports) and Motion at 8-9 (Dick's Sporting Goods, etc.).  Moreover, "both utilize the Web as a marketing and advertising facility, a factor courts have consistently recognized as exacerbating the likelihood of confusion."  *Brookfield*, 174 F.3rd. at 1057; *see also* Calmese Dec. ¶ 4 (Prove It! websites); McNamer Dec. ¶ 5, Ex. 4 (adidas online store).

### 4.   Strength of Mark

Plaintiff spends much time discussing the strength of the Mark.  Where, as here, the mark and the products are closely related "the strength of the mark is of diminished importance in the likelihood of confusion analysis."  *Brookfield*, 174 F.3d at 1058-59.  Indeed, as McCarthy has made clear: "Whether a mark is weak or not is of little importance where the conflicting mark is identical and the goods closely related."  2 McCarthy on Trademarks & Unfair Competition ¶ 11.76 (4th ed. 1998).  However, even though the Mark's strength is not important, the Mark is reasonably strong.

"PROVE IT!" is clearly not descriptive.  Further, it is hard to imagine of what it is suggestive.  One cannot possibly surmise, by looking at the mark "PROVE IT!" what goods or services are "suggested."  The Mark is either an arbitrary mark or a marginally suggestive mark.  Thus, even if this factor was of any import, the factor weighs in Calmese's favor.

### 5.   Intent to Confuse

This factor is even less important than the strength of the mark.  Plaintiff claims it had no knowledge of the Mark when it adopted the identical mark for use on t-shirts.  First, that is implausible given the size of adidas and sophistication of adidas's design, branding and legal departments.  It would seem likely that adidas (or any company of similar size and

sophistication) would at the very least do a basic trademark search on the USPTO website. All one has to do is type in "PROVE IT" for "clothing" and the Mark the only registered trademark that comes up. *See* McNamer Dec. ¶ 12, Ex. 11. Second, Calmese had prior discussions and an ongoing co-sponsorship relationship with Reebok (an adidas subsidiary). Calmese Dec. ¶ 8. Thus, adidas should have had knowledge of the Mark through its subsidiary. These two inferences, cast in the light most favorable to Calmese, makes this factor weigh in Calmese's favor as well.

### 6. Actual Confusion, Likely Expansion and Consumer Care

The last three factors are of almost no importance given the similarity of the marks and the goods in question herein. There is no specific evidence of actual confusion, but Calmese has limited resources to perform any significant search or testing on this point. Calmese is already selling his products throughout the United States, so expansion is irrelevant, and tips completely in Calmese's favor. *See* Calmese Dec. ¶ 4; *see also* www.usaprovit.com, www.provitsportgear.com. Finally, there is no evidence related to consumer care. Plaintiff posits that consumers exercise care in selecting apparel, but supplies no facts to support this hypothesis. Thus, with no evidence on this factor, consumer care necessarily weighs in Calmese's favor as the non-moving party. With the first two factors—similarity of marks and relatedness of goods—weighing completely in Calmese's favor, the remaining six are of little or no import. Regardless, five of these six also weigh in Calmese's favor.[8]

### C.    Plaintiff's Use Is Not Descriptive

Plaintiff's entire argument regarding its purported fair use collapses with one analogy:

---

[8] There is no evidence on either side related the actual confusion, but evidence of this factor typically is presented by the trademark owner, since it would require the infringer to prove a negative. As such, this factor arguably weighs in Plaintiff's favor.

Page 12 – DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

"JUST DO IT." Nike's "JUST DO IT" mark is likely one of the most valuable and most recognized trademarks in the world. It is applied to clothing and shoes in exactly the same fashion as Calmese's Mark. It is exactly the same kind of trademark as "PROVE IT!" in that it is arguably marginally suggestive of attaining some goal, and as it is applied to athletic apparel by Nike, it is marginally suggestive of obtaining an athletic goal. Obviously Nike's "JUST DO IT" mark is a protectible trademark. Other than the differing size of Nike's and Calmese's business, there is a clear similarity between the "JUST DO IT" mark and the "PROVE IT!" mark. The Mark is marginally suggestive in the exact same way as "JUST DO IT" is marginally suggestive.[9]

More importantly, adidas has invested significant efforts to promote its "IMPOSSIBLE IS NOTHING" registered trademark Registration No. 2,922,020. McNamer Dec. ¶ 7, Ex. 6 ("Impossible Is Nothing" TESS Record). That mark is also almost exactly the same type of mark as "PROVE IT!" in that, as used on athletic apparel, it is marginally suggestive of attaining some athletic success or goal. It is used by adidas in exactly the same way Calmese uses the Mark. Indeed, while adidas argues that its use of an adidas logo on the infringing shirt with the "PROVE IT" mark somehow cancels out the infringement of the Mark, that is <u>exactly</u> how adidas uses its "IMPOSSIBLE IS NOTHING" trademark on t-shirts. Compare McNamer Dec. ¶ 6, Ex 7 (adidas "Impossible Is Nothing" t-shirts with both trademarks displayed) with Calmese Dec. Ex 7. (adidas infringing "Prove It" t-shirts with both trademarks displayed).

adidas would not dare to display "JUST DO IT" on any clothing article. Moreover, adidas would surely enforce its "IMPOSSIBLE IS NOTHING" mark if another clothing

---

[9] Further, Plaintiff's reliance on the number of Google hits for the term "Prove It" is inapposite. A Google search of the words "just do it" yields approximately 9,060,000 uses of the exact phrase "just do it" on websites on the Internet. McNamer Dec. ¶ 6, Ex. 5.

company displayed it in large letters across a t-shirt and on a hang tag. Plaintiff has no fair use defense, let alone a fair use defense worthy of summary judgment.[10]

**D.    Calmese's Counterclaims are Not Subject to Summary Adjudication**

For the reasons set forth above, Calmese's counterclaims, which are the exact opposite of adidas's claims, are not subject to summary adjudication. Calmese has ample evidence to show that he owns a valid trademark and that Plaintiff's use of that exact mark on the exact same goods is likely to cause confusion.

DATED this 14th day of January, 2009.

Respectfully submitted,

**MCNAMER AND COMPANY, PC**

By:    /s/ Anthony E. McNamer
Anthony E. McNamer, OSB #00138
Deborah Gumm, OSB #040646
McNamer and Company
920 SW Third Avenue, Suite 200
Portland, Oregon 97204
Tel: 503.727.2500
Fax: 503.727.2501

---

[10] Further, the Mark is also closely similar in general meaning and application to adidas's "TUNIT" and "TUNE YOUR RUN" registered trademarks. *See* McNamer Dec. ¶ 9, Ex 8. And the Mark is closely similar to several other trademarks registered by Nike. *See e.g.* McNamer Dec. ¶ 10, Ex. 9 ("GET HOT", "RUN LUCKY", "THE EYES LEAD THE BODY", "RESPECT THE PAST REPRESENT THE FUTURE", "GET LONG, GET FEEL, GET DOWN").

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served upon counsel of record for all parties to this proceeding via the Court's electronic filing system on all parties registered to receive notice via that system on January 14, 2009.

      /s/ Deborah Gumm
Anthony E. McNamer
Deborah Gumm
**MCNAMER AND COMPANY**
920 S.W. Third Avenue
Suite 200
Portland, OR 97204
(503) 727-2500
Fax: (503) 727-2501

*Attorneys for Defendant and Counterclaimant*